***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence. The Full Commission adopts the Opinion and Award of Deputy Commissioner Houser with minor modifications.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. The parties are properly before the Industrial Commission, which has jurisdiction of the parties and of the subject matter of this claim. *Page 2 
2. On all relevant dates, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act and an employment relationship existed between plaintiff-employee and defendant-employer.
3. All parties have been properly designated and there is no question as to misjoinder or nonjoinder of parties.
4. On all relevant dates, the Phoenix Insurance Company/Travelers Indemnity Company of America was the carrier on the risk for defendant-employer.
5. Plaintiff was hired by defendant-employer on or about 5 August 2004 as a Retail Store Manager and has not worked for defendant-employer since approximately 21 January 2005. On 20 January 2005, plaintiff sustained an injury which, at the time, she alleged was workplace related.
6. On 25 January 2005, plaintiff was evaluated by Dr. Steven Bonner for spinal pain and foot pain. Plaintiff was diagnosed as having foot pain, back pain, and dermatophyte infection. On 1 February 2005 plaintiff returned to Dr. Bonner who assigned restrictions on pushing, pulling, bending, stooping, lifting, and prolonged standing. Additionally, plaintiff was restricted to working four hours per day.
7. On 14 February 2005, plaintiff was examined by Dr. W. Hodges Davis who diagnosed a foot sprain with some metatarsalgia. For these conditions, Dr. Davis recommended an orthotic and physical therapy.
8. On 16 February 2006, Dr. Bonner released plaintiff at maximum medical improvement and assigned her a two percent (2%) permanent partial disability rating to the right foot. *Page 3 
9. On 15 March 2005, defendant-employer closed the store location where plaintiff was employed at the time of her alleged injury.
10. This matter was heard on 22 February 2006 by Deputy Commissioner Robert J. Harris. Following the hearing, Deputy Commissioner Harris submitted written questions to plaintiff's treating physicians, Dr. Bonner and Dr. Davis. Dr. Bonner opined that plaintiff sustained a low back strain and foot strain secondary to her fall at work. Dr. Davis opined that plaintiff's right foot pain was related to her 20 January 2005 workplace accident. Dr. Davis indicated that Plaintiff would benefit from physical therapy, orthopedics, and possible surgery.
11. By Order dated 5 September 2006, Deputy Commissioner Harris gave the parties until 5 October 2006 in which to submit written Contentions and a proposed Opinion and Award. Thereafter, Deputy Commissioner Harris forwarded defense counsel's office a series of ex parte emails he received from plaintiff beginning on 18 September 2006. In those e-mails, plaintiff indicated that she was receiving medical treatment from a physician in Columbia, South America and that this physician was interested in performing surgery to her foot.
12. On 3 January 2007, Deputy Commissioner Harris issued an Opinion and Award wherein he concluded plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. Plaintiff was awarded total disability compensation for the period of 22 January 2005 through 31 May 2005. Further, plaintiff was awarded medical treatment for her right foot, ankle, leg, and back.
13. Deputy Commissioner Harris initially ruled plaintiff could receive medical treatment for her injuries by an orthopedist in Bogotá, Columbia. Thereafter, defendants filed a Motion for Reconsideration on that issue. On 8 January *Page 4 
2007, Deputy Commissioner Harris granted Defendants' Motion and ordered that plaintiff was to receive her medical treatment in Charlotte, with or at the direction of Dr. Davis.
14. In accordance with Deputy Commissioner Harris' Opinion and Award, plaintiff was paid $4,071.93 in total disability compensation, and all outstanding medical bills for Drs. Becker, Bonner, and Davis were paid. In addition, defendants authorized plaintiff to treat in North Carolina with Dr. Davis and paid her travel and lodging expenses.
15. Plaintiff returned to North Carolina at defendants' expense in June 2007. On 13 June 2007 Dr. Davis examined plaintiff and recommended that she undergo surgery on her right foot. Plaintiff's right foot surgery was tentatively scheduled for 21 June 2007.
16. Thereafter, Dr. Davis' office was unable to contact plaintiff at her hotel to confirm her 21 June 2007 surgery. Therefore, plaintiff was not placed on the surgery schedule. Plaintiff's right foot surgery with Dr. Davis was rescheduled for 28 June 2007. Plaintiff was also scheduled and approved for an examination on her back with Dr. Chasnis on 28 June 2007.
17. Defendant paid plaintiff $700.00 to cover her meals during the period she was in Charlotte, which was to be from 13 June 2007 through 12 July 2007. Defendants also paid plaintiff $1,400.00 to cover her travel expenses while in Charlotte during this period. Defendant sent payments directly to the Hilton Garden Inn totaling $3,200.00 to cover plaintiff's lodging for this period.
18. In two electronic messages dated 25 June 2007 and 26 June 2007, plaintiff requested that the Commission approve her surgery, medical treatment, and all of her medical expenses for her compensable work injuries in Bogota, Colombia where she currently resides. Defendants opposed this Motion. *Page 5 
19. On 29 June 2007, Dr. Davis' office advised defendants that plaintiff did not report for her foot surgery. Additionally, plaintiff failed to keep her 28 June 2007 appointment for her back with Dr. Chasnis. The Hilton Garden Inn reported plaintiff checked out of the hotel on 27 June 2007 at approximately 11:00 a.m, the morning before her scheduled surgery.
20. Plaintiff subsequently underwent right foot surgery on 5 July 2007 in Colombia with Dr. Luis G. Castro Suarez. Plaintiff also claimed to be treating for alleged post-traumatic stress disorder in Colombia.
21. Thereafter, numerous motions were filed in this matter. By Order dated 11 September 2007 Executive Secretary Weaver ordered defendants to provide plaintiff with one additional offer and arrangement of medical treatment in accordance with the 8 January 2007 Order of Deputy Commissioner Harris. Also, plaintiff was ordered to accept the medical treatment provided by defendants in accordance with N.C. Gen. Stat. § 97-25.
22. Pursuant to the 11 September 2007 Order, defendants advised plaintiff that they would authorize a return examination with Dr. Davis and again sought to cover the costs of airfare, lodging, and local travel expenses. Appointments were then scheduled for Dr. Chasnis on 14 November 2007 and with Dr. Davis later that same day.
23. On 5 October 2007, defendants' adjuster received a telephone message from the director of OrthoCarolina stating that plaintiff's 14 November 2007 appointments with Dr. Davis and Dr. Chasnis were cancelled and that Dr. Davis nor any other physician at OrthoCarolina would again agree to examine or treat Plaintiff.
24. In a letter dated 10 October 2007, defendants sought written clarification from Dr. Davis' office as to the status of plaintiff's 14 November 2007 medical appointments. In a letter dated 12 October 2007, Dr. Davis noted that the clinic/patient relationship with plaintiff was *Page 6 
terminated because plaintiff was abusive to the staff. It was further noted that plaintiff's 14 November 2007 appointments were cancelled and that Dr. Davis would not provide a referral to another health care provider.
25. On 11 October 2007, Deputy Commissioner Harris instructed defendants to work with plaintiff to locate another health care provider. Dr. Thomas C. Friedrich of Carolina Bone Joint then agreed to examine plaintiff. Defendants scheduled an appointment with Dr. Friedrich for 14 November 2007 and notified plaintiff of this medical appointment.
26. Due to her late arrival for the medical appointment on 14 November 2007, the appointment was rescheduled to 15 November 2007. Plaintiff was again late to her 15 November 2007 appointment, so her appointment was rescheduled for 16 November 2007 with Dr. Robert P. Nantais because Dr. Friedrich was unavailable on that date. Industrial Commission Nurse, Gloria Bullock, RN, CCM, attended this appointment.
27. In a 16 November 2007 medical note, Dr. Nantais reported that plaintiff's right foot was well healed from her previous surgery in Columbia. As for her back, it was his impression she had a workers' compensation injury of 20 January 2005 with subsequent disc herniation at T10 and T12 and L5-S1. Dr. Nantais recommended chronic pain management for her right foot and back.
28. On 10 December 2007, Nurse Bullock issued a report which stated that, when plaintiff arrived for the appointment on 16 November 2007, plaintiff advised that she was refusing to be seen by Dr. Nantais because he was only going to address her back and right foot conditions when she had several other conditions she wanted him to address.
29. After the exam, Nurse Bullock spoke with Dr. Nantais who indicated his recommendation for pain management. Nurse Bullock explained this to plaintiff who insisted *Page 7 
that she be referred to another specialist. Nurse Bullock tried to explain this was a pain management specialist not an orthopedic specialist. Plaintiff then sent an email expressing her distrust and dissatisfaction with Dr. Nantais' evaluation and Nurse Bullock's presence and assistance.
30. During her stay in Charlotte in November 2007, plaintiff indicated that she planned to reside in Raleigh and would not be returning to Colombia. Plaintiff filed another Form 33 and then returned to Columbia for the holidays.
31. By letter dated 4 December 2007, plaintiff was sent a check in the amount of $460.00 for payment of hotel expenses and meals from 17 November 2007 through 19 November 2007 and payment of the $100.49 for her stay at the Blake Hotel on 12 June 2007.
32. Defendants were then advised that plaintiff would return to North Carolina in January or February 2008. Defendants began working with Cary Orthopedics to set up an appointment for continued care. Defendants also requested flight information and attempted to schedule payment for plaintiff's return visit.
33. On 17 March 2008, a hearing in this matter was set before Deputy Commissioner George R. Hall III. However, plaintiff advised she would not be returning to the United States for either the hearing or for continued treatment. Plaintiff further advised she would be undergoing additional surgery in Columbia on 23 February 2008. Therefore, Deputy Commissioner Hall removed her claim from the active hearing docket.
34. Following the removal of her claim from the docket, plaintiff sent a steady stream of emails to defendants, defense counsel, Deputy Commissioner Harris, and others at the Industrial Commission requesting action on her claim. *Page 8 
35. In April 2008, in an attempt to provide plaintiff with the requested treatment, defendants requested full and complete medical records from plaintiff's treating physicians in Columbia, South America. Plaintiff was advised that if she wanted to receive medical treatment in South America, defendants would need a copy of all medical records related to treatment already incurred and prior notice of exams so defendants could address the cost for the treatment. Plaintiff was informed that defendants would also need the medical providers' names and contact information. By email dated 8 April 2008, plaintiff refused to provide this information.
36. Plaintiff filed another Form 33 Request for Hearing on 6 June 2008 for payment of ongoing medical treatment, among other issues. Defendants filed a Form 33R on 13 June 2008.
37. On or about 7 July 2008, defense counsel received the hearing docket setting this matter for hearing before Deputy Commissioner Houser on 19 August 2008. On 8 July 2008 defense counsel advised plaintiff of the hearing date, time, and location. On 10 July 2008, Deputy Commissioner Houser again advised plaintiff her claim had been set for hearing on 19 August 2008 in Charlotte. Therefore, plaintiff had notice of the hearing and had the opportunity to be heard.
38. On 8 July 2008, defendants advised plaintiff they had arranged an appointment with The Rehab Clinic on 31 July 2008 and that they would provide travel, lodging and meals while she was in North Carolina. Defendants requested that plaintiff make travel arrangements and advise of her arrangements so payment on her behalf could be made. Plaintiff then advised defendants that she would not travel to Charlotte without her daughter and never advised defendants of her travel arrangements. *Page 9 
39. On numerous occasions, plaintiff has been advised by defense counsel and by members of the Industrial Commission that the Workers' Compensation Act does not provide for travel, meals, or expenses for her daughter.
40. Defendants filed a Motion for Sanctions on 14 July 2008 based upon plaintiff's continued false allegations, inappropriate comments and defamatory statements regarding defendants. By Order dated 21 July 2008, Deputy Commissioner Houser denied defendants' Motion at that time, and ordered plaintiff to cease making these inappropriate types of statements.
41. A last offer of treatment was made by defendants on 21 July 2008. At no time did plaintiff advise defendants of a willingness to present for the appointment. Thereafter, the 31 July 2008 medical appointment was cancelled.
42. Since the 21 July 2008 Order was issued, plaintiff has continued to make inappropriate and objectionable statements, false allegations and defamatory statements against defense counsel, members of the Industrial Commission, and health care providers.
43. After receiving notice of the hearing set for 19 August 2008, defense counsel sent multiple subpoenas to witnesses, corresponded with witnesses and their counsel, prepared considerable documents for hearing exhibits, and spent significant time and resources preparing for the hearing of this matter before Deputy Commissioner Houser.
44. On 18 August 2008, when it became apparent that plaintiff would not appear for the 19 August 2008 hearing, the parties were advised a hearing on the merits would not be conducted but that the parties could appear and present motions. *Page 10 
45. Had plaintiff attended the hearing on 19 August 2008, she could have taken advantage of defendants' offer of treatment on 31 July 2008 and been in Charlotte at defendants' expense.
46. On 21 August 2008, plaintiff filed a Motion regarding medical treatment and alleging that Deputy Commissioner Harris' 8 January 2007 Order had not been complied with. However, the credible evidence of record is that defendants have been fully compliant with that Order and have attempted to provide plaintiff with treatment on multiple occasions at significant expense. Compliance with the Order was complicated by the fact that Dr. Davis has refused further treatment of plaintiff due to her behavior.
47. In numerous Motions, including the 21 August 2008 Motion, plaintiff has requested lifetime health insurance and life insurance. However, such insurance is not covered by the Workers' Compensation Act.
48. Plaintiff has made serious allegations against Gloria Bullock, RN, and personnel at OrthoCarolina and Carolinas Medical Center including allegations of mistreatment, discrimination, and lies. Plaintiff has also alleged that someone falsified a document from OrthoCarolina.
49. Plaintiff has failed to comply with the 8 January 2007 and 11 September 2007 Orders requiring her to cooperate with medical treatment provided by defendants in accordance with N.C. Gen. Stat. § 97-25.
50. Plaintiff's continued refusal to accept treatment being offered by defendants, along with her continued inappropriate behavior towards defendants, has drawn this matter out unreasonably and added to the cost of litigation.
51. Plaintiff is in violation of Deputy Commissioner Houser's 21 July 2008 Order. *Page 11 
52. Plaintiff has acted in a manner that has unreasonably delayed this matter. Plaintiff did not confirm she would not be attending hearing until the day prior thereto. Plaintiff has, to date, made no attempt to reschedule the hearing on the merits. Additionally, defendants have been prejudiced as the result of plaintiff's failure to prosecute her claim. Defense counsel has devoted significant time to preparing for the hearing of this matter to include preparation of evidence, subpoenaing witnesses, corresponding with witnesses and counsel for witnesses, preparation for testimony of witnesses and plaintiff, and travel to and from the hearing before the deputy commissioner on 19 August 2008. Defendants have been prejudiced by having to pay for defense counsel's time preparing for hearing, for the time defense counsel spent drafting Motions and proposed Orders, and having to appear on 19 August 2008 when a hearing on the merits was not going to take place.
53. Sanctions short of dismissal will not suffice in this claim. Defendants attempted to make it possible for plaintiff to appear at hearing on 19 August 2008 in conjunction with providing continued treatment. Defendants have been unsuccessful in their attempts and believe future attempts will be futile. Any sanction short of dismissal will not satisfy the need for finality in this litigation and claim. Any sanction short of dismissal would also be unfair to defendants who have already dedicated significant time and resources to this claim.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Defendants have complied with the terms of the 8 January 2008 Opinion and Award by Deputy Commissioner Harris and as such, plaintiff has failed to show good ground in *Page 12 
support of her 21 August 2008 Motion alleging noncompliance by defendants. N.C. Gen. Stat. § 97-25.
2. Pursuant to N.C. Gen. Stat. § 97-25 an employee who has suffered a compensable injury while on the job is entitled to medical treatment for that injury which is reasonably required to effect a cure, give relief, or lessen the employee's period of disability. However, the employer shall direct medical care of the injured worker unless or until circumstances deem a further order of the Commission. Id. An employee's refusal to accept any medical, hospital, surgical or other treatment, or rehabilitative procedure when ordered by the Industrial Commission shall bar the employee from further compensation until such refusal ceases, and no compensation shall at any time be paid for the period of suspension unless in the opinion of the Industrial Commission the circumstances justified the refusal, in which case, the Industrial Commission may order a change in the medical or hospital service.Id.
3. Plaintiff is in direct violation of N.C. Gen. Stat. § 97-25, the 8 January 2007 Opinion and Award by Deputy Commissioner Harris, and the 11 September 2007 Order of Executive Secretary Weaver. During plaintiff's period of noncompliance, defendants are not obligated to expend time or resources attempting to schedule and arrange for plaintiff to undergo additional medical treatment. N.C. Gen. Stat. § 97-25. Additionally, plaintiff's is not entitled to be reimbursed for medical treatment provided in Columbia, South America. Id.
4. Workers' Compensation Rule 609(6) states, in pertinent part, that ". . . [a]t no time shall written communications, whether addressed directly to the Commission or copied to the Commission, be used as an opportunity to cast the opposing party or counsel in a bad light." Plaintiff has violated Rule 609 of the North Carolina Workers' Compensation Act through her repeated inappropriate and at times ex parte written communications with the Commission. *Page 13 
5. North Carolina Workers' Compensation Rule 613(1)(c) provides that "[u]pon proper notice and an opportunity to be heard, any claim may be dismissed with or without prejudice by the Industrial Commission on its own motion or by motion of any party for failure to prosecute or to comply with these Rules or any Order of the Commission." Prior to dismissing a claim pursuant to Rule 613(1)(c) the Commission must, in its Order, address three factors: "(1) whether the plaintiff acted in a manner which deliberately or unreasonably delayed the matter; (2) the amount of prejudice, if any, to the defendant caused by the plaintiff's failure to prosecute; and (3) the reason, if one exists, that sanctions short of dismissal would not suffice."
6. Plaintiff has unreasonably delayed and continues to unreasonably delay the adjudication of this matter and has substantially prejudiced defendants and continues to substantially prejudice defendants through her behavior and failure to cooperate. North Carolina Workers'Compensation Rule 613(1)(c); Lee v. Roses,162 N.C. App. 129,590 S.E. 2d 404 (2004); Jackson v. Flambeau Airmold Corp.,165 N.C. App. 875, 599 S.E. 2d 919 (2004). Therefore, plaintiff's claim should be dismissed with prejudice.
7. Although plaintiff is in violation of Deputy Commissioner Houser's 21 July 2008 Order that she cease making objectionable statements regarding defendants, members of the Industrial Commission and health care providers, at this time, a contempt proceeding would not be appropriate. North Carolina Workers' Compensation Rule 609.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission makes the following: *Page 14 
 AWARD
1. Plaintiff's Motion to Compel defendants' compliance with prior rulings by the Commission relating to her medical treatment is HEREBY DENIED.
2. Plaintiff's claim is DISMISSED WITH PREJUDICE.
3. Each side shall bear its own costs.
This the 9th day of June 2009.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ DANNY L. McDONALD COMMISSIONER *Page 1